

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-30-2004

# Asrail v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1406

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Asrail v. Atty Gen USA" (2004). *2004 Decisions*. Paper 901.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/901

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-1406
_____

MAGDA FEKRY ASRAIL,
*Petitioner*

v.

JOHN ASHCROFT, Attorney General of the United States,
*Respondent*

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(INS No.  A95-146-011)
_____

Submitted Under Third Circuit LAR 34.1(a)
March 26, 2004
Before: AMBRO, CHERTOFF and BECKER,
*Circuit Judges*

(Filed: March 30, 2004)

_____

OPINION
_____

BECKER, *Circuit Judge.*

This is a petition for review by Magda Fekry Asrail of an order of the Board of

Immigration Appeals, which affirmed, without a separate opinion (under the new

"streamlining regulations"), the decision of the Immigration Judge ("IJ") denying Asrail's applications for asylum and withholding of removal, and for protection under the Convention Against Torture ("CAT" or "the Torture Convention"). Asrail maintains that, contrary to the IJ's opinion, the record reflects sufficient credible evidence support of her claims. Referencing the stringent standard of review in these cases, the government responds that substantial evidence supports the opinion of the IJ that Asrail failed to present a credible asylum claim, primarily because of numerous material inconsistencies and omissions throughout her written application and her testimony.

Because Asrail has failed to argue her eligibility for withholding of removal and protection under the CAT before the Board and before this Court, she has waived review of these issues, and hence we shall confine our discussion to the asylum claim. Because the parties are fully familiar with the background facts and procedural history we need not set them forth, except as necessary to explain our *ratio decidendi*.

## I.

Asrail is a thirty-two year old female from Egypt, who is Coptic Orthodox Christian. She grounds her claim for asylum on several incidents she experienced in Egypt which, she submits, were due to her religion. More particularly, she contends that she was persecuted by Islamic fundamentalists on account of her religious faith and her employment with Benetton. Her application states that the extremists "would wait for me early in the morning when I was going to work or in the evening when I was returning

2

from work. They would abuse me by beating me and throwing me in the street."

Asrail says that she came to the United States but returned to Egypt in 1999 and was subjected to threats not to go back to work or practice any kind of activity at church. She represents that when she returned to Egypt again in 2000 after another sojourn in the United States, two bearded men attacked her, snatched her chain with the attached cross, beat her and started to rip her clothes off, and tried to force her into an empty house to rape her. Asrail states that her attackers fled when a man and woman were passing while she was screaming, and that she was treated at a hospital and a report was filed at a police station.

Asrail's application also states that on April 16, 2001, the extremists called and threatened to kill her. She then fled to the United States on April 21, 2001. She maintains that after her departure to the United States her family was contacted by the extremists and told that she would be killed if she returned to Egypt.

Along with her asylum application, Asrail submitted corroborating material, including a police and hospital report, and articles on the persecution of Coptic Christians in Egypt. Her birth certificate states she is born of Coptic Christian parents. Asrail testified that she could not return to her home country and that if she were to return to Egypt "my life will be in danger because somebody might try to attack me or rape me or kill me." She attributes her persecution to the Gamaat Islamia, an Islamic group. She also testified that she was attacked a total of five times by this group—in August 1997,

3

February 1998, August 1998, September 1999, and April 2001, though the incidents in 1997, 1998 and 1999 were not mentioned in her asylum application.

Asrail's legal argument is that she is a refugee within INA § 101(a)(42)(A), who is unwilling or unable to return to her country because of persecution or well-founded fear of persecution on account of race, religion, nationality, membership in a social group or political opinion. More specifically she contends that: (1) she is unable or unwilling to return to her home country because of persecution and a well founded fear of persecution; (b) the beatings, threats and attempted rape she suffered are persecution on account of her religion; (c) her fear of persecution is well founded arising out of past persecution and country conditions in Egypt; (d) her fear of persecution is well founded since her government was unable or unwilling to control her persecutors; and (e) she suffered the persecution on account of her religion—Coptic Orthodox Christian.

II.

The IJ's decision held that Asrail had not provided credible evidence, hence failed to meet her burden of proof and persuasion necessary to establish eligibility for any of the remedies for which she applied. Under our jurisprudence, we review the Board's decision as the final agency determination, *see* INA § 242(a)(1), except where, as here, the Board of Immigration Appeals does not render its own opinion but simply affirms the decision of an immigration judge. In that instance, "the IJ's opinion effectively becomes the BIA's, and, accordingly, a court must review the IJ's decision." *Abdulai v. Ashcroft*,

4

239 F.3d 542, 549 n.2 (3d Cir. 2001)(citing *Chen v. INS*, 87 F.3d 5, 7 n.3 (1st Cir. 1996)). The IJ's factual determination that petitioner failed to offer sufficient evidence to establish her eligibility for asylum is reviewed under the highly deferential "substantial evidence" standard. *See Dia v. Ashcroft*, 353 F.3d 228 (3d Cir. 2003).

To establish eligibility for asylum on the basis of past persecution, an alien must show that she suffered some harm rising to the level of persecution on account of a statutorily protected ground, and that it was committed by the government or forces the government is unable or unwilling to control. *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003)(citing *Chen Yun Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002)). If past persecution is established, the asylum applicant is entitled to a rebuttable presumption of a well-founded fear of persecution. *See* 8 C.F.R. § 208.13(b)(1). Absent evidence of past persecution, an alien can demonstrate a well-founded fear of future persecution by showing that she "has a genuine fear, and that a reasonable person in her circumstances would fear persecution if returned to her native country." *Gao*, 299 F.3d at 272 (citation omitted). An applicant for asylum must therefore show that her fear of persecution is both subjectively genuine and "supported by objective evidence that persecution is a reasonable possibility." *Chang v. INS*, 119 F.3d 1055, 1066 (3d Cir. 1997) (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430 (1987)). Ultimately, the alien bears the burden of establishing an affirmative nexus between the past or future persecution alleged and an enumerated characteristic under the INA. *See* INA §

5

101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13; *Chang*, 119 F.3d at 1065.

In establishing her eligibility for asylum, an alien also has the burden of supporting her claim through credible evidence. *Gao*, 299 F.3d at 272. The alien's own testimony alone may be sufficient to meet this burden if it is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis of the claim. *See* 8 C.F.R. § 208.13(a); *Gao*, 299 F.3d at 272. In other words, as Asrail argues, corroboration is not a *sine qua non*.

III.

We are satisfied that the IJ's decision that Asrail was not credible was supported by substantial evidence. We itemize the following points in support of that conclusion:

1. There were a number of inconsistencies between Asrail's written asylum application and her testimony to the Court. Her asylum application represented that "the only specific incident of alleged persecution took place on April 13th, 2001." But, at her hearing, Asrail testified that she had been similarly assaulted on four other occasions: once in 1997; twice in 1998; and once in 1999.

2. On direct examination, Asrail claimed to have resigned from her position with Benetton following the 1999 assault "at least in part because she felt that the assaults were caused by her employment with that company," but she submitted a letter from her former employer stating that she actually resigned from Benetton "because [the Petitioner] wanted to pursue career opportunities outside of Egypt."

6

3. Asrail failed to reveal her unauthorized employment in the United States (as a nanny) on her application for asylum.

4. Asrail failed to corroborate critical aspects of her asylum claim. For example, she did not attempt to provide the hospital records or police reports that could substantiate four of the five alleged assaults that made up the bases for her claim of past persecution or submit any affidavits from the neighbors who allegedly witnessed the assaults.

5. Although Asrail testified that her individual attackers were all members of a particular "Islamic group," she could not specifically identify or otherwise describe them, other than to say that they had long beards and wore white shirts, and her report to the police was not sufficiently detailed to identify "the names, identity or addresses of the perpetrators." While this failure might be understandable, it contributes to Asrail's inability to show that she suffered past persecution in Egypt on account of her religion.

6. Although Asrail contends that she was "beaten and attacked on five separate occasions," and that "[h]er persecutors delivered threatening phone calls during [a] short trip Petitioner took to Egypt," she offered, in support of her claim, only her own largely uncorroborated testimony and various background documents, and in her application for asylum, Asrail described in detail only one specific incident of alleged persecution.

7. Although Asrail says that she is "readily identifiable" as a Coptic Orthodox Christian, that identity does not automatically establish her persecution "on account of" that characteristic. Asrail presented no testimony indicating that her attackers were even

7

aware of her religious affiliations or that her beliefs were in fact the motivation for the assaults against her. Indeed, the IJ concluded that the most recent and most serious attack which Asrail described may have simply been a "criminal, sexual assault."

8. There is no evidence in the record demonstrating that the Egyptian government failed to protect Asrail, or that Islamic fundamentalists and other groups are beyond governmental control. In support of her claim of past persecution, Asrail argues that she sought police protection from her attackers but that the police did not express a willingness to capture those who assaulted her. She testified before the IJ that each time she was assaulted, the Egyptian police came and filed a written report. However, because Asrail was unable to specifically describe her attackers, the reports were not detailed enough to allow officials to identify or further pursue the perpetrators.

9. The background information in the record indicates that although Coptic Christians constitute a minority in Egypt, they are a group that the government actively tries to protect. Moreover, some of the documentary evidence illustrates recent efforts by the Egyptian government to curb the activities of Islamic fundamentalists and other militant groups.

10. Despite Asrail's uncorroborated claims of past persecution, she provided no affidavits to substantiate any of the alleged assaults against her. After initially departing Egypt for the United States, Asrail traveled to Egypt twice more before returning to the United States in April 2001. *See* A.R. 132-138, 328; cf. 8 C.F.R. § 208.8(b)(indicating

8

that an applicant who leaves the United States and returns to the country of claimed persecution is presumed to have abandoned her application, absent compelling reasons). Moreover, Asrail did not apply for asylum on either of the first two trips she made to the United States, and following her most recent arrival in this country, the petitioner waited an additional two months to file her application for asylum.

11.  There is no evidence to support the contention that Asrail would be singled out for persecution if returned to Egypt.  And the fact that she left the United States on two separate occasions to return to Egypt also undermines any claim of a fear of future persecution in that country.

12.  Asrail has provided neither allegations nor evidence that any of her family members (her mother, two sisters, and younger brother, all of whom continue to live in Egypt) have been subjected to persecution by fundamentalist groups in Egypt.

The petition for review will be denied.

9