NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0234n.06
Filed: March 30, 2005

No. 03-3930

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


| | | |
|---|---|---|
| **RAMESHBHAI PATEL, JYOTSANABEN PATEL, and NAYANA PATEL** | ) ) ) | ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION |
| Petitioners, | ) ) | APPEALS (No. A78-356-942) |
| **v.** | ) ) | **OPINION** |
| **ALBERTO GONZALES, United States Attorney General,** | ) ) ) | |
| Respondent. | ) | |


BEFORE: BOGGS, Chief Judge; MARTIN, Circuit Judge; and GWIN, District Judge.[*]

JAMES S. GWIN, District Judge. Rameshbhai Patel ("Patel" or "Petitioner"), Jyotsanaben Patel, and Nayana Patel petition for judicial review of the Board of Immigration Appeals' (the "Board") order. The Board's order, without opinion, affirmed the Immigration Judge's denial of Petitioner's request for asylum and withholding of deportation. In denying the Petitioner's application for asylum, the Immigration Judge found that Patel lacked credibility and that the Petitioner could neither show past persecution nor a well-founded fear of future persecution. The parties have waived oral argument, and this Court unanimously agreed that it was not needed in this

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

-1-

case. FED. R. APP. P. 34(a).

For the reasons that follow, we **UPHOLD** the decision of the Board, and **DENY** the petition for review.

## I. BACKGROUND

Patel and his wife, Jyotsanaben Patel, are natives of India and citizens of Kenya. Mr. Patel and his wife entered the United States on July 10, 1999, as non-immigrant visitors for pleasure. Their daughter, Nayana Patel, had earlier entered the United States in 1996, also as a non-immigrant visitor for pleasure, and she later became a student. On March 12, 2000, Patel filed an application for Asylum and Withholding of Removal on behalf of himself, his wife, and his daughter. Jyotsanaben Patel and Nayana Patel are beneficiaries of his asylum application.

On May 12, 2000, the Immigration and Naturalization Service ("INS") issued to the Patels a Notice to Appear in Immigration Court. With the Notice, the INS charged the Patels with violating Section 212(a)(6)(A)(i) of the Immigration and Nationality Act of 1952 (the "Act"), which concerns aliens present in the United States without being admitted or paroled.

Petitioner, Jyotsanaben Patel, and Nayana Patel appeared before an Immigration Judge, represented by Attorney David Wenger. They requested asylum, as well as withholding of deportation.

A. Immigration Hearing

In October 2000, the Immigration Judge conducted a hearing that featured testimony from Mr. Patel, Jyotsanaben Patel, Nayana Patel, and several other witnesses. At the hearing, the Petitioner and his beneficiaries requested asylum and withholding, saying they were persecuted in

Kenya for their ethnicity. After the first day of the hearing, the INS further charged Petitioner and his beneficiaries with violating Section 237(a)(1)(A) of the Act, which concerns visas procured by fraud or willful misrepresentation.

An interpreter was present at the hearing, but Patel's attorney stated that Petitioner needed the translator's help only if he failed to understand a word. The attorney subsequently asked the interpreter to translate for Patel during his cross-examination. The interpreter translated for Jyotsanaben Patel, who does not speak English. This hearing was the interpreter's first time translating, and the Immigration Judge reminded her of the protocol on several occasions. She also consulted a dictionary at least once to translate a legal phrase.

At the asylum hearing, Patel, as the lead petitioner, was the primary witness. During his testimony, Patel described several incidents that provided the basis of his claim that he fears persecution in Kenya. He traced this fear to several incidents, occurring between 1992 and 1997, including several robberies of his home, the theft of his truck, his employees' refusal to work, and harassment of his children. Patel testified that he and his family were afraid of leaving their house after 7:00 p.m.

Patel testified that his problems in Kenya began after the 1992 elections. In 1993, the Patels were victims of an armed robbery of their home. Patel recounted that his wife and the children were tied up during the robbery, but that he was not home. Jyotsanaben Patel testified that the robbers "took advantage" of her, without more explanation. Petitioner's home was robbed on several other occasions, even though Patel installed extensive security measures. In 1996, while no one was home, robbers removed the window grate and stole electronic items from Patel's home. Kenyans

of African descent threatened and attacked the African guard at his house.

In another incident, six Kenyans of African ethnicity attacked and robbed Patel. He testified that this incident occurred in 1994 while he and his brother-in-law were repairing a flat tire. However, the Immigration Judge noted that the police report does not list Petitioner as a victim of the robbery. Instead, the police report lists only the brother-in-law and an employee as victims.

Furthermore, Patel testified that his employees refused to work. Patel is a civil engineer, and he owns a construction company. In 1997, his employees, who were Kenyans of African descent, harmed his construction company because they refused to work.

Finally, Patel reported that his children suffered repeated harassment at school. He said that the children were taunted and harassed while heading to school. Another witness, Hina Khetia, testified concerning the harassment that she suffered at school as an Indian in Kenya. She went to school with one of Petitioner's daughters, and she reported that Kenyans of African descent harassed them by pulling their hair, spitting on them, and robbing them just because they were Indian.

These incidents formed the basis for Petitioner's asylum claim. Of the incidents that he reported to the police, Petitioner testified that the police did not make any arrests. He also stated that he was robbed because of his affluence. Patel owns six houses, which he rents to tenants who are Indian. None of his tenants has had any problems with Kenyans of African ethnicity.

Although Patel described incidents spanning from 1992 through 1997, Patel and his wife traveled to the United States in 1997 and 1998 to visit their children. After each trip, they returned to Kenya without mentioning their fear of persecution.

B. Inconsistencies in Petitioner's Testimony

Patel gave inconsistent testimony about when he formed the intent to apply for asylum and whether he feared persecution. During the first day of testimony, Petitioner stated that he intended to remain permanently in the United States at the time of his entry in 1999. Yet Patel failed to inform the consular officials or immigration inspectors of his fear of returning to Kenya. In contrast, during Patel's second day of testimony, he stated that he did not fear persecution upon entry and that he only intended to visit the United States. In his second day of testimony, Patel testified that he feared persecution in Kenya after entering the United States and reading a news article in November 1999. Although not submitted in evidence, the article supposedly discussed the increased tensions between Indians and Africans in Kenya. After speaking with his children, Petitioner stated that he feared persecution in Kenya. Mr. Patel and his wife were hesitant to remain in the United States, however, because they own properties and a business in Kenya.

Petitioner's children testified that they convinced Mr. Patel and his wife to apply for asylum. Nayana Patel testified that she and her siblings convinced her parents to remain in the United States in February 2000 by persuading them that Kenya was too dangerous. Sangeeta Patel also testified that her father did not want to apply for asylum until his children urged him to do so.

Patel's testimony also contained discrepancies as to why he sent his children to the United States. He testified that he sent Nayana to the United States so that she would be safe. He alternatively testified that he sent her to the United States to study. Nayana Patel testified that Patel sent her to the United States in 1996 because he feared for her safety. Sangeeta Patel further testified that her father sent her and her brother to the United States because Kenya was not safe.

C. The Immigration Judge Denied Asylum

-5-

On August 31, 2001, the Immigration Judge denied Petitioner's asylum and withholding applications, concluding that Patel's testimony was not credible and that he could show neither past persecution nor a well-founded fear of persecution.

The Immigration Judge made an adverse credibility determination with regard to Petitioner after finding numerous inconsistencies within his testimony during the two-day hearing. The contradictions included Petitioner's testimony about when he formed his intent to apply for asylum, the incidents causing his fear of persecution, and his reasons for sending his children to the United States. The Immigration Judge concluded that Petitioner's inconsistent testimony went to the heart of his asylum claim, holding that the defects in his testimony were not minor inconsistencies. Patel's inconsistencies undermined his assertion that he suffered past persecution or had a well-founded fear of future persecution in Kenya.

Petitioner Patel attributed these inconsistencies to a faulty memory as a result of his diabetes. Nayana Patel and Bharatkumar Patel testified that their father had memory problems. Yet the Immigration Judge determined that poor memory did not cause Patel to testify "to this Court that when he entered the United States he did fear Kenya and entered as a visitor nonetheless."

In addition to the adverse credibility determination, the Immigration Judge found that the Petitioner was not a refugee: he neither suffered past persecution, nor had a well-founded fear of future persecution. The Immigration Judge found that even if Petitioner were credible, the previous incidents amounted only to discrimination based on wealth and did not constitute persecution. The Immigration Judge concluded that general conditions of lawlessness are not persecution and that conditions in Kenya had not worsened since 1999. Consequently, the Immigration Judge denied

Petitioner's asylum application.

D. The Board Affirmed the Immigration Judge's Decision

On June 4, 2003, a Board member summarily affirmed the Immigration Judge's decision without a separate written opinion.[1]

Patel then filed the petition for review now before the Court, arguing that the Board and the Immigration Judge erred in finding that Petitioner was not credible and in concluding that he neither suffered past persecution nor had a well-founded fear of future persecution.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review the Board's decision affirming the Immigration Judge's denial of asylum. 8 U.S.C. § 1252(a)(1) (2000); *see Singh v. Ashcroft*, -- F.3d --, No. 03-3546, 2005 U.S. App. LEXIS 1968, at *9 (6th Cir. Feb. 8, 2005). Where, as here, the Board adopts the decision of the Immigration Judge in lieu of issuing its own opinion, we consider the Immigration Judge's decision as the final agency decision and review it directly. *See Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003).

In reviewing a decision that an alien is ineligible for asylum, we review administrative findings of fact, including credibility determinations, under the deferential substantial evidence test. *See, e.g., Yu v. Ashcroft*, 364 F.3d 700, 702-03 (6th Cir. 2004); *Hammer v. INS*, 195 F.3d 836, 840 (6th Cir. 1999); *Adhiyappa v. INS*, 58 F.3d 261, 265 (6th Cir. 1995). An immigration judge's factual determinations will be reversed only if "any reasonable adjudicator would be compelled to conclude

---

[1] The Petitioner offered additional evidence to the Board, which included a more recent State Department Country report on Kenya and other newspaper articles. The Board did not consider the evidence, and instead noted that the newly-offered evidence was insufficient to warrant reopening the asylum proceedings.

to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Yu*, 364 F.3d at 702; *Klawitter v. INS*, 970 F.2d 149, 151-52 (6th Cir. 1992). In making an adverse credibility finding, an immigration judge must provide "specific reasons." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). We review questions of law concerning immigration proceedings de novo. *See Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004). Finally, as a reviewing court, we should not reverse "simply because it is convinced that it would have decided the case differently." *Klawitter*, 970 F.2d at 151-52 (internal quotation marks omitted).

## III. DISCUSSION

In reviewing a denial of asylum, we make a two-step inquiry. *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003). The first step is whether the applicant qualifies as a refugee, as defined in 8 U.S.C. § 1101(a)(42)(A). *Ouda*, 324 F.3d at 451. In the second step, if the petitioner qualifies as a refugee, the Attorney General may exercise discretion and grant asylum. 8 U.S.C. § 1158(b); *Ouda*, 324 F.3d at 451.

First, to obtain asylum, Petitioner must show that he is a refugee whose application merits a favorable exercise of discretion. *See Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998). A "refugee" is an alien who is unable or unwilling to return to his home country "*because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.*" 8 U.S.C. § 1101(a)(42)(A) (emphasis added). An applicant has the burden of proving that he suffered past persecution or has a well-founded fear of future persecution. 8 C.F.R. § 208.13(a), (b); *see also Yu*, 364 F.3d at 703. In this case, the Immigration Judge and the Board determined that the Petitioner does not qualify as a

refugee. It is this determination that we now review on appeal.

In his petition, Patel advances two arguments. First, Patel argues that the Immigration Judge erred in determining that he was not credible. He maintains that the contradictions in his testimony were minor inconsistencies that were insufficient to support an adverse credibility determination. Patel further claims that the inconsistencies were attributable to memory loss, which resulted from his diabetes, and to an inexperienced translator. Second, Patel contends that the Immigration Judge incorrectly found that he neither suffered from past persecution nor had a well-founded fear of future persecution because of his Indian ethnicity.

Substantial evidence supports the Board's and Immigration Judge's findings of fact that Petitioner was not credible and that he failed to show either past persecution or a well-founded fear of persecution. Accordingly, we deny the petition for review and uphold the Board's decision.

A. Adverse Credibility Determination

The Immigration Judge denied Petitioner refugee status primarily because she found that he was not credible. After reviewing the record as a whole, we conclude that substantial evidence supports this adverse credibility determination.

An adverse credibility finding must be based on issues that go to the heart of an applicant's claim. *Yu*, 364 F.3d at 703 (holding that an adverse credibility determination is sufficient to deny asylum). Such a finding "cannot be based on an irrelevant inconsistency." *Daneshvar v. Ashcroft*, 355 F.3d 615, 619 n.2 (6th Cir. 2004). Nor can it be based upon a minor inconsistency. *Sylla*, 388 F.3d at 926. "If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility." *Daveshvar*, 355 F.3d at 623 (internal quotation

marks omitted).

Petitioner argues that the Immigration Judge's finding regarding his credibility was erroneous because it was based only on minor inconsistencies. In contrast to inconsistencies that go to the heart of a petitioner's claim, minor inconsistencies reveal nothing about the persecution of a petitioner and are an inadequate basis for an adverse credibility finding. *See Sylla*, 388 F.3d at 926; *Yu*, 364 F.3d at 704.

In agreement with the conclusion of the Immigration Judge, we find that these inconsistencies in Petitioner's testimony were central to the merits of his asylum claim. *See Yu*, 364 F.3d at 703-04; *see also Meraja v. Ashcroft*, 113 Fed. Appx. 147, 149, No. 02-4428, 2004 U.S. App. LEXIS 27437, at *4 (6th Cir. Oct. 29, 2004) (unpublished opinion) (finding inconsistencies "not minor because they describe the persecution that goes to the heart of . . . Meraja's claim for asylum"); *Diaw v. Ashcroft*, 108 Fed. Appx. 318, 321, No. 03-3252, 2004 U.S. App. LEXIS 17826, at *5 (6th Cir. Aug. 18, 2004) (unpublished opinion). Patel gave conflicting testimony about several subjects -- the incidents that he experienced in Kenya, his intent upon entering the United States, his decision to apply for asylum, and his fear of returning to Kenya -- that form the basis for his claim of persecution. Despite Petitioner's arguments, his conflicting answers went to the heart of his asylum claim and cannot be characterized as minor inconsistencies.

Petitioner also argues that the interpreter's incompetence caused the Immigration Judge's adverse credibility finding. An incompetent interpreter can constitute a violation of due process if the translation prejudiced the applicant, which means that the interpreter's error significantly affected the outcome of the proceedings. *See Amadou v. INS*, 226 F.3d 724, 726-28 (6th Cir. 2000)

(finding denial of due process because the "interpreter's questionable translation formed the basis of the Board's decision to deny his applications"). In this case, however, the record belies Petitioner's argument.

The Petitioner's hearing was the interpreter's first translation, but she was fluent in Gujarati, which is Mr. Patel's native language. Although the interpreter was inexperienced, the record does not clearly impugn her capabilities.[2] In at least one instance, the interpreter used a dictionary to translate "voluntary departure." The Immigration Judge instructed the interpreter on several occasions regarding protocol. The record shows that the Immigration Judge replayed testimony for the interpreter when necessary.

Furthermore, the record offers no support that the translation prejudiced Petitioner. The interpreter's lack of experience did not affect the outcome of the hearing. *See Amadou*, 226 F.3d at 727-28. Counsel for Patel stated that Patel only needed the interpreter for words that he did not understand, but counsel later requested the interpreter to translate for Patel during cross-examination. Patel answered many questions in English. Even when the interpreter was translating questions for Petitioner, he often would answer in English before the interpreter finished translating. Counsel had ample opportunity to correct any perceived errors in the translation during redirect examination. *See Iancu v. INS*, 69 Fed. Appx. 661, 662-63, No. 02-3480, 2003 U.S. App. LEXIS 12353, at \*\*4-5 (6th Cir. June 17, 2003) (unpublished decision). Even though the interpreter was

---

[2] Even if the interpreter's competency was questionable, we need not resolve Petitioner's due process claim because we affirm the Immigration Judge's decision to deny the Petitioner's asylum application as he neither exhibited past persecution nor had a well-founded fear of future persecution. *See Daneshvar*, 355 F.3d at 622; *Ouattara v. Ashcroft*, No. 03-3966, 2005 U.S. App. LEXIS 641, at \*5 (6th Cir. Jan. 12, 2005) (unpublished decision).

inexperienced, the Immigration Judge determined that Petitioner's testimony was inconsistent apart from the interpreter's translations, and errors in translating did not form the basis for the Immigration Judge's decision. Given Petitioner's familiarity with the English language, the interpreter's abilities did not significantly affect the outcome of the proceedings.

Finally, Petitioner attributes his inconsistent testimony to memory problems that he experiences as a result of his diabetes. Yet this proffered reason does not account for his conflicting testimony. The Immigration Judge, who had an opportunity to observe Patel's demeanor on both days of the hearing, considered and rejected this explanation. The Immigration Judge found Patel's explanation insufficient to account for the number of inconsistencies that were central to Patel's asylum claim. In particular, the Immigration Judge concluded that "this Court is not convinced that this poor memory caused him to state to this Court that when he entered the U.S. he did fear Kenya and entered as a visitor nonetheless." *Patel*, No. A 78 356 942, slip op. at 11 (Aug. 31, 2001). Petitioner has not offered an explanation for his inconsistencies that compels us to conclude that he is credible. *See Yu*, 364 F.3d at 704 (finding petitioner's explanations for the immigration judge's cited inconsistencies insufficient to compel conclusion that petitioner was credible); *see also Girigan v. Ashcroft*, No. 03-4253, 2005 U.S. App. LEXIS 232, at *8 (6th Cir. Jan. 5, 2005) (Boggs, C.J.) (unpublished decision).

Thus, Petitioner has not met his burden of showing that any reasonable adjudicator would be compelled to reach a different conclusion than the Immigration Judge reached regarding his credibility. *See* 8 U.S.C. § 1252(b)(4)(B); *Yu*, 364 F.3d at 703-04. We now address Patel's arguments that past persecution and fear of future persecution entitle him to asylum.

B.  Petitioner Does Not Qualify as a Refugee

The Immigration Judge concluded that even if Patel's testimony were credible, he neither demonstrated past persecution nor established a well-founded fear of future persecution.[3] Instead, the Immigration Judge concluded that Patel's testimony at most showed that Patel suffered discrimination based upon wealth, which is not persecution because of ethnicity.  The Immigration Judge concluded that "[t]he robberies and other incidents directed toward respondent were simply indicative of resentment towards [Patel] due to his wealth.  Resentment and discrimination based on wealth is not persecution."  *Patel*, No. A 78 356 942, slip op. at 15 (Aug. 31, 2001).  The record does not compel a conclusion that the Petitioner was persecuted, nor that he has a well-founded fear of persecution if he returns to Kenya.

We define persecution as "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty."  *Mikhailevitch*, 146 F.3d at 390.  Persecution is "'an extreme concept that does not include every sort of treatment our society regards as offensive.'"  *Ali*, 366 F.3d at 410 (quoting *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir. 1995)); *see also Fatin v. INS*, 12 F.3d 1233, 1243 (3d Cir. 1993).  "[H]arassment or discrimination without more does not rise to the level of

---

[3] An applicant establishes past persecution "if the applicant can establish that he or she has suffered persecution in the past in the applicant's country of nationality . . . on account of race, religion, nationality, membership in a particular social group, or political opinion, and is unable or unwilling to return to, or avail himself or herself of the protection of, that country owing to such persecution."  8 C.F.R. § 208.13(b)(1).  Without showing past persecution, an applicant establishes a well-founded fear of persecution if (1) he has a "fear of persecution in his or her country of nationality . . . on account of race, religion, nationality, membership in a particular social group, or political opinion;" (2) "[t]here is reasonable possibility of suffering such persecution if he or she were to return to that country;" and (3) he or she is "unable or unwilling to return to, or avail himself or herself of the protection of, that country because of such fear."  8 C.F.R. § 208.13(b)(2)(i).

persecution." *Mikhailevitch*, 146 F.3d at 389.

Under Section 1101(a)(42)(A) of the Act, the Petitioner bears the burden of proving that his fear of persecution is both subjectively genuine and objectively reasonable. *See id.* In the absence of corroborating documents, a petitioner's testimony will satisfy his burden of proof if it is "believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis of his fear" of persecution. *Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir. 1994) (internal quotation marks omitted). An adverse credibility determination undermines a claim of persecution.

The Immigration Judge concluded that the Petitioner failed to establish fear of persecution. To reverse this decision, the evidence would have to compel a reasonable fact-finder to conclude that fear of persecution existed. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). The record does not contain sufficient evidence to substantiate Petitioner's fear of persecution. Instead, substantial evidence supports the Immigration Judge's determination.

To show past persecution, the Petitioner must present evidence that suggests the applicant was persecuted because of his ethnicity. Isolated incidents of harassment, without more, do not constitute persecution. *Mikhailevitch*, 146 F.3d at 390; *see Begum v. Ashcroft*, 115 Fed. Appx. 307, 308, No. 03-3693, 2004 U.S. App. LEXIS 25999, at **3-4 (6th Cir. Dec. 15, 2004) (unpublished decision) (concluding that evidence of intimidation from an Islamist Group without government response was harassment and did not rise to the level of persecution); *see also Ujkic v. Ashcroft*, 107 Fed. Appx. 560, 562, No. 02-4361, 2004 U.S. App. LEXIS 17827, at *4 (6th Cir. Aug. 18, 2004) (unpublished decision). Furthermore, in most instances, neither hostility between competing ethnic groups nor race discrimination constitutes persecution. *See Ouda*, 324 F.3d at 450; *Mikhailevitch*,

146 F.3d at 390; *see also Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998) (requiring petitioner to show that "mistreatment she suffered was directed personally toward her, and that it was substantially more grievous in kind or degree than the general manifestation of hostility between competing ethnic and religious groups in Fiji"); *Ghaly*, 58 F.3d at 1431 (holding that "where private discrimination is neither condoned by the state nor the prevailing social norm" it does not constitute persecution); *Bastanipour v. INS*, 980 F.2d 1129, 1133 (7th Cir. 1992) (distinguishing persecution from "mere discrimination or harassment").

Petitioner advances several arguments concerning past persecution, but his arguments fail. Patel did not provide credible examples of past persecution based on his ethnicity. Petitioner was never arrested, imprisoned, or detained. He and his wife have traveled into and from Kenya without difficulty. To bolster his asylum claim, Patel testified to various events, and the most recent occurred in 1997. The record shows that Petitioner and his family have been the victim of several crimes, but such generalized lawlessness normally does not constitute persecution. *See Singh*, 134 F.3d at 967 (stating that "[m]ere generalized lawlessness and violence between diverse populations . . . generally is not sufficient" to obtain asylum); *see also Meghani v. INS*, 236 F.3d 843, 847 (7th Cir. 2001) (holding "[c]onditions of political upheaval which affect the populace as a whole or in large part are generally insufficient to establish eligibility for asylum"); *Mitev v. INS*, 67 F.3d 1325, 1330-31 (7th Cir. 1995) (stating that "unpleasant and even dangerous conditions do not necessarily rise to the level of persecution"). At most, Patel describes incidents that constitute harassment or discrimination based upon wealth. As the Immigration Judge found, the incidents of robbery are reasonably attributable to class tensions and Patel's affluence, rather than to persecution.

The Petitioner also argued that the Kenya government could not protect the Indians living in Kenya from the Kenyans of African descent. As evidence, the Petitioner states that the police did not arrest suspects after his home was robbed. Yet the record shows that after each incident where Patel called the police, the police responded and filed a report. The Immigration Judge correctly concluded that the police's failure to arrest a suspect is not persecution. From the record before us, we cannot find a history of past persecution in this case.

Because Patel failed to establish past persecution, he retained the burden of proving a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable. *See Mikhailevitch*, 146 F.3d at 390; *Perkovic*, 33 F.3d at 620-21. Petitioner failed to make this showing as well. The Immigration Judge found that Patel did not show a genuine fear of future persecution, and that he failed to show an objectively reasonable fear of future persecution. If Patel had feared persecution from these events, he would have applied for asylum when he visited the United States in 1997 and 1998. Instead, after both trips to the United States, he returned to Kenya. In returning to Kenya and continuing to live in Kenya after the incidents occurred, Patel undermines his claim of persecution. *See Asrail v. Ashcroft*, 91 Fed. Appx. 249, 253-54, No. 03-1406, 2004 U.S. App. LEXIS, at ** 11-12 (3d Cir. Mar. 30, 2004) (concluding that "the fact that she left the United States on two separate occasions to return to Egypt also undermines any claim of a fear of future persecution in that country"). Patel did not apply for asylum until March 2000. The testimony suggested that Mr. Patel and his wife were hesitant to remain in the United States and that Patel's children convinced them to apply for asylum. Collectively, this testimony undermines the sincerity of Patel's claim of fearing future persecution. Moreover, Petitioner fails to show that his fear of

persecution was objectively reasonable.  The record contains no evidence that conditions in Kenya worsened after 1999.

Substantial evidence supports the Immigration Judge's conclusion that the Petitioner neither suffered past persecution nor has a well-founded fear of future persecution.  Because nothing in the record compels us to reach a different conclusion, we must uphold the Immigration Judge's determination.  *See Mullai v. Ashcroft*, 385 F.3d 635, 638 (6th Cir. 2004).

Finally, because the Petitioner did not establish eligibility for asylum, he cannot meet the more difficult standard required for withholding of deportation.  *See Mikhailevitch*, 146 F.3d at 390.

The petition for judicial review is denied.

### IV. CONCLUSION

Accordingly, we **UPHOLD** the decision of the Board, and **DENY** the petition for review.