**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0477n.06

No. 08-4610

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 09, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ALFREDO VELASQUEZ-GARCIA, | ) | |
| | ) | |
| **Petitioner,** | ) | **ON PETITION FOR REVIEW** |
| | ) | OF AN ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| ERIC H. HOLDER, JR., United States | ) | |
| Attorney General, | ) | |
| | ) | **O P I N I O N** |
| **Respondent.** | ) | |
| | ) | |

Before:  MOORE and ROGERS, Circuit Judges; and THAPAR,[*] District Judge.

**KAREN NELSON MOORE, Circuit Judge.**  Alfredo Velasquez-Garcia petitions for

review of an order of the Board of Immigration Appeals ("BIA") affirming the immigration judge's

("IJ") denial of his applications for asylum, withholding of removal, and protection under the

Convention Against Torture ("CAT").  Velasquez-Garcia argues that the BIA and the IJ erred in

finding that he failed to show either past persecution or a well-founded fear of future persecution on

account of his political opinion or his membership in a social group.  For the reasons discussed

below, we **DENY** Velasquez-Garcia's petition for review.

---

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

# I. BACKGROUND

Velasquez-Garcia is a native and citizen of Guatemala who entered the United States through Mexico without inspection in 1992. Velasquez-Garcia filed an affirmative application for asylum and withholding of deportation with the former Immigration and Naturalization Service on July 28, 1992, asserting that he feared being killed by guerillas if he returned to Guatemala. On May 19, 2006, Velasquez-Garcia was served with a Notice to Appear, which charged him with removability under the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i). In July 2006, Velasquez-Garcia appeared before the IJ and conceded removability. At that time, he also requested the renewal of his asylum application before the IJ and, in the alternative, to apply for voluntary departure.

On December 20, 2006, a hearing was held before the IJ on Velasquez-Garcia's applications for asylum, withholding of removal, and protection under the CAT. Velasquez-Garcia was the only witness who testified at the hearing. The IJ found Velasquez-Garcia to be credible and summarized his testimony as follows:

> [Velasquez-Garcia] is a 36-year-old, male, native and citizen of Guatemala who entered the United States in 1992. He has admitted, through counsel, that he was neither admitted or paroled by an Immigration Officer at that time, and has conceded removability as charged.

> The application is based on political opinion and membership in a particular social group. Basically it comes down to [Velasquez-Garcia] was a member of the Civil Patrol of his village during the civil war in Guatemala. Guerillas would attack the village. They would also attempt to recruit people or kidnap or kill people in the village. He joined the Civil Patrol in 1986 when he was 16-years-old and served until he left Guatemala. His father and brothers were also in the Civil Patrol. His father was actually a leader of a group of 12. They were armed with government weapons which they had to turn in at the end of their shift and give to the next group.

> [Velasquez-Garcia] indicated that he didn't particularly want to join the Civil Patrol, but the army would have thought he was a Guerilla if he hadn't joined, so he joined along with the rest of his family. He was in combat on a few occasions, exchanging fire with Guerillas. He, himself, was never shot, but he saw some other people who were. [Velasquez-Garcia] also talked about a situation when he was

3

17-years-old, Guerillas sneaked into the house at night and they wanted to kidnap his grandfather. It's not clear why they wanted to kidnap the grandfather. [Velasquez-Garcia] thinks they might have wanted to recruit him . . . . In any event, the grandfather resisted and was badly hurt in the process of resisting, and shortly died of his injuries.

The grandfather's sister, [Velasquez-Garcia]'s great aunt, was apparently kidnaped by the Guerillas and not seen again. So presumably, she was killed.

[Velasquez-Garcia] is not exactly sure why his grandfather and his great aunt were specifically targeted. He was not specifically targeted other than as a member of the Civil Patrol. Guerillas shot at him.

Now [Velasquez-Garcia] realizes that the civil war is over now but he is afraid that the former Guerillas would take revenge against him; although it isn't clear what the revenge would be for. . . . He does indicate that in the small town he's from people would recognize him, which I'm sure is true. But his father lives there and nothing's happened to his father.

Administrative Record ("AR") at 49-51 (IJ Decision at 1-3).

Velasquez-Garcia also submitted several background documents, including State Department reports on conditions in Guatemala. According to these reports, the civil war ended in 1996, but the IJ also noted that widespread violence remains in the country: "The background information is clear that there's a great deal of crime in the country. Many of the soldiers on both sides were unable to find jobs when the war ended, and they have continued to exist by becoming criminals or gangs." AR at 51 (IJ Decision at 3).

In an oral decision, the IJ denied Velasquez-Garcia's applications for asylum, withholding of removal, and protection under the CAT, finding Velasquez-Garcia removable as charged but granting his application for voluntary departure. Although the IJ found Velasquez-Garcia to be a credible witness,[1] the IJ concluded that he had not suffered past persecution or shown a well-founded

_____

[1]The IJ further praised Velasquez-Garcia for his truthfulness and bravery: "He seems to be a truthful young man. The respondent served bravely defending his village during the civil war in

4

fear of future persecution on account of a protected ground to accord refugee status. The IJ first noted that, under the Supreme Court's decision in *INS v. Elias-Zacarias*, 502 U.S. 478 (1992), "[r]ecruitment by a Guerilla force or punishment for refusing to be recruited or a resistance to a Guerilla force would not be considered persecution under the Act." AR at 52 (IJ Decision at 4). With regard to past persecution, the IJ stated that he did "not accept [Velasquez-Garcia]'s claim that he was persecuted by watching his grandfather being attacked and dying of his wounds" because "[t]hat is not persecution to a respondent" and "it was part of the overall war situation." AR at 52-53 (IJ Decision at 4-5). The IJ also found that, even if Velasquez-Garcia had shown past persecution, "the civil war is over" and "[t]here are no more Guerillas." AR at 53 (IJ Decision at 5). Although the IJ noted that there are gangs of criminals throughout the country, he also found that "[t]here is no particular reason to believe [Velasquez-Garcia] is any more at risk from these gangs than anyone else in the country." *Id*. Therefore, Velasquez-Garcia's belief that the former guerillas would take revenge against him for his membership in the civil patrol was without "any objective basis." *Id*. Moreover, the IJ noted that, even if Velasquez-Garcia would be recognized in his small town, "he can certainly solve that problem by returning to some other part of Guatemala." *Id*.

Concluding that Velasquez-Garcia had failed to meet the standard for refugee status, the IJ also found that Velasquez-Garcia "necessarily failed to meet the higher standard of proof for withholding of removal." AR at 54 (IJ Decision at 6). The IJ also denied his application for protection under the CAT because "there is no indication that anyone wishes to torture him in Guatemala" and any former guerillas that did so would "not be acting with the consent,

Guatemala and when he left it was a dangerous situation because the war was raging." AR at 52 (IJ Decision at 4).

5

acquiescence, or willful blindness of the government." *Id*. The IJ did, however, order that Velasquez-Garcia be granted voluntary departure, noting that Velasquez-Garcia "is a good person and does deserve voluntary departure in the exercise of discretion." *Id*.[2]

Velasquez-Garcia filed a timely appeal to the BIA, and the BIA entered a decision dismissing the appeal on October 29, 2008. The BIA "agree[d] with the [IJ], for the reasons stated, that [Velasquez-Garcia], who was never physically harmed in Guatemala, has failed to establish that he was the victim of persecution." AR at 2 (BIA Decision at 1). Regarding fear of future persecution, the BIA noted that "the widespread violence by [criminal] gangs does not provide a basis for asylum" and that "the law does not authorize asylum for someone who may be subject to such generalized violence." *Id*. The BIA also found that this decision was supported by the fact that Velasquez-Garcia's father has remained in Guatemala unharmed. *Id*. Finally, the BIA agreed that Velasquez-Garcia failed to meet the higher standard for withholding of removal and had not shown that he was "more likely than not" to be tortured if he returned to Guatemala. AR at 3 (BIA Decision at 2) (internal quotation marks omitted). Velasquez-Garcia has filed a timely petition for review.[3]

## II. ANALYSIS

### A. Standard of Review

Where, as here, the BIA adopts the reasoning of the IJ while also providing additional reasoning, we directly review the decision of the IJ while considering the BIA's additional reasoning.

_____

[2]At the conclusion of the hearing, the IJ expressed regret in denying Velasquez-Garcia's application, stating, "Good luck to you, sir. You seem like a nice fella and I certainly can appreciate the danger that you lived in before you came here, but unfortunately I can't grant your applications. Take care." AR at 102 (Hr'g Tr. at 34).

[3]Velasquez-Garcia's brief does not address the BIA's denial of protection under the CAT. We therefore consider this issue forfeited and do not review the BIA's denial of CAT relief.

*Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005). We review the factual findings of the IJ and the BIA using the "substantial evidence standard" under which "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Ndrecaj v. Mukasey*, 522 F.3d 667, 672-73 (6th Cir. 2008) (internal quotation marks omitted); *accord* 8 U.S.C. § 1252(b)(4)(B).

**B. Asylum**

"In order to qualify for asylum, an applicant must pass a two-step inquiry: first, whether the petitioner is a refugee . . . and second, whether the petitioner merits a favorable exercise of discretion by the IJ." *Ndrecaj*, 522 F.3d at 674 (alteration in original) (internal quotation marks omitted). A refugee is defined as a person "who is unable or unwilling to return to" his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Therefore, "[i]n order to establish refugee status, the applicant must demonstrate either past persecution or a well-founded fear of future persecution." *Ndrecaj*, 522 F.3d at 674. If the applicant establishes past persecution, there is a rebuttable presumption that the applicant has a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). If the applicant fails to establish past persecution, he may establish refugee status by independently showing that he has a well-founded fear of persecution. 8 C.F.R. § 1208.13(b)(2). "The burden of proof is on the applicant to establish that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(i).

Velasquez-Garcia argues that the IJ and the BIA erred in finding that Velasquez-Garcia failed to establish either actual past persecution or a well-founded fear of future persecution. We conclude that the findings of the IJ and the BIA are supported by substantial evidence.

## 1. Past Persecution

Velasquez-Garcia argues that he has shown that, while living in Guatemala, he was subjected to persecution on the basis of both his political opinion and his membership in a particular social group, specifically his family. The IJ and the BIA determined that Velasquez-Garcia had not shown past persecution on either basis because (1) the Supreme Court's decision in *Elias-Zacarias* precluded his claim of persecution on account of political opinion and (2) the beating of Velasquez-Garcia's grandfather did not amount to persecution of Velasquez-Garcia.

The IJ's finding as to persecution on the basis of political opinion is supported by substantial evidence. In *Elias-Zacarias*, the Supreme Court held that "a guerilla organization's attempt to coerce a person into performing military service" does not "*necessarily* constitute[] 'persecution on account of . . . political opinion.'" 502 U.S. at 479 (quoting 8 U.S.C. § 1101(a)(42)(A)). Velasquez-Garcia argues that his case is distinguishable from *Elias-Zacarias*, because, unlike Elias-Zacarias, who fled Guatemala upon his first encounter with the guerillas, Velasquez-Garcia actually served in the civil patrol and witnessed guerillas assault his grandfather. The holding in *Elias-Zacarias*, however, "did not turn on the degree of the persecution, but the motive for the persecution." *Portillo v. Gonzales*, 236 F. App'x 171, 176 (6th Cir. 2007); *see Elias-Zacarias*, 502 U.S. at 482 ("[T]he mere existence of a generalized 'political' motive underlying the guerillas' forced recruitment is inadequate to establish (and, indeed, goes far to refute) the proposition that Elias-Zacarias fears persecution *on account of* political opinion, as § 101(a)(42) requires."). This distinction is demonstrated by our decision in *Pascual v. Mukasey*, 514 F.3d 483 (6th Cir. 2007), the facts of which are similar to the case before us. In *Pascual*, the petitioner had been conscripted, beaten, and threatened by the civil patrol and later captured and threatened by the guerillas. Applying *Elias-*

8

*Zacarias*, we concluded that the petitioner had not shown persecution on account of political opinion, as "the actions of the government and the guerillas furthered the groups' political aims" and were not "designed to persecute Pascual on account of his political beliefs." *Pascual*, 514 F.3d at 487. We further explained,

> The obligatory nature of service in the civil patrol precludes the guerilla forces (or for that matter anyone else) from crediting Pascual with any political opinion based solely on his service in the patrol. And the guerilla force's abduction of members of the civil patrol is as apt to be motivated by a desire to incapacitate its adversaries as by a desire to retaliate against a political opponent—making it impossible to say that the record compelled the IJ to find political persecution.

*Id*. at 487-88.

Here, Velasquez-Garcia has presented no evidence that the guerillas' threats were based on anything more than an effort to recruit him away from the civil patrol and into their ranks. All of Velasquez-Garcia's testimony indicates that the guerillas' threats were an attempt to scare him into joining the guerilla forces, and Velasquez-Garcia testified that he believes that the guerillas who beat his grandfather were trying to recruit his grandfather. Moreover, as in *Elias-Zacarias*, Velasquez-Garcia testified that he joined the civil patrol because he "had to join" for fear that "they" would think he was a guerilla. AR at 83 (Hr'g Tr. at 15); *see Elias-Zacarias*, 502 U.S. at 482 ("[Elias-Zacarias] testified that he refused to join the guerillas because he was afraid that the government would retaliate against him and his family if he did so."). Therefore, under *Elias-Zacarias* and *Pascual*, we must conclude that the evidence does not compel the determination that Velasquez-Garcia was persecuted on account of his political opinion.

The decision of the BIA and the IJ with respect to Velasquez-Garcia's claim of past persecution on account of membership in a particular social group also is supported by substantial

9

evidence. Velasquez-Garcia never was harmed physically by the guerillas, but he claims he suffered persecution when his grandfather was beaten by guerillas and when guerillas kidnaped his grandfather's sister. We have held "that 'persecution' . . . requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). Although we have noted that "other circuit courts have held that the 'family' is a cognizable 'particular social group' within the meaning of 8 U.S.C. § 1104(a)(42)(A)," *Akhtar v. Gonzales*, 406 F.3d 399, 405 (6th Cir. 2005), we also have stated that a petitioner "'cannot rely solely on the persecution of [his] family members to qualify for asylum,'" *id*. at 406 (alteration in original) (quoting *Ciorba v. Ashcroft*, 323 F.3d 539, 545 (7th Cir. 2003)). Here, Velasquez-Garcia has not testified that he himself suffered "any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch*, 146 F.3d at 390. There is no evidence that the guerillas attacked his grandfather to inflict harm on Velasquez-Garcia, and, to the contrary, Velasquez-Garcia testified that he believed the guerillas were attempting to recruit his grandfather. The evidence does not compel the conclusion that Velasquez-Garcia was subject to persecution before he left Guatemala, and Velasquez-Garcia therefore is not entitled to a presumption of a well-founded fear of future persecution.

### 2. Future Persecution

Substantial evidence also supports the BIA's conclusion that Velasquez-Garcia has not independently established a well-founded fear of future persecution. As the IJ noted, the civil war in Guatemala ended in 1996. *Pascual*, 514 F.3d at 488. Although there is widespread gang violence in the country, *id*., we have previously noted that fear of crime generally is not enough to establish

10

a well-founded fear of persecution, *see Koliada v. INS*, 259 F.3d 482, 488 (6th Cir. 2001) (noting that "fear of crime" is "legitimate but [] not relevant to [] fear of future political persecution"); *see also Patel v. Gonzales*, 126 F. App'x 283, 292 (6th Cir. 2005) ("[T]he record shows that Petitioner and his family have been the victim of several crimes, but such generalized lawlessness normally does not constitute persecution.").

Velasquez-Garcia argues, however, that he specifically will be targeted by the guerillas because of his previous service with the civil patrol and because of his family. Although Velasquez-Garcia testified that he received threats from the guerillas, these threats all occurred before Velasquez-Garcia left Guatemala in 1992 and before the civil war ended. More important, the fact that Velasquez-Garcia's father and brothers, all of whom were members of the civil patrol and presumably have the same family ties, continue to reside unharmed in Guatemala weighs against a finding of a well-founded fear of future persecution. *Gumbol v. INS*, 815 F.2d 406, 413 (6th Cir. 1987); *Zacarias v. Gonzales*, 232 F. App'x 458, 463 (6th Cir. 2007). Overall, Velasquez-Garcia has not provided evidence sufficient to compel the conclusion that he has established a well-founded fear of future persecution.

## C. Withholding of Removal

To qualify for withholding of removal, Velasquez-Garcia "must demonstrate that there is a clear probability that he would be subject to persecution if he were to return to [Guatemala]." *Koliada*, 259 F.3d at 488-89. This is "a more stringent burden of proof than one for asylum." *Id*. at 488. Because the BIA's denial of Velasquez-Garcia's application for asylum is supported by substantial evidence, "it therefore follows that he cannot satisfy the more stringent standard for withholding of [removal]." *Id*. at 489.

11

### III. CONCLUSION

For these reasons, we **DENY** Velasquez-Garcia's petition for review.