NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0687n.06
Filed: September 12, 2006

No. 05-3873

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LIZA VUKTILAJ; LAURA VUKTILAJ, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | ON PETITION FOR REVIEW OF A |
| v. | ) | DECISION OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ALBERTO R. GONZALES, ATTORNEY | ) | |
| GENERAL, | ) | |
| | ) | |
| Respondent. | ) | |

Before: GUY and SUTTON, Circuit Judges; and ALARCON, Circuit Judge.[*]

PER CURIAM. Liza Vuktilaj and her daughter, Laura Vuktilaj, are natives and citizens of Albania. They seek review of a decision by an Immigration Judge (affirmed without opinion by the Board of Immigration Appeals) denying their application for asylum, withholding of removal and relief under the Convention Against Torture. The IJ found that Liza Vuktilaj's testimony lacked credibility and that she (and her daughter) had failed to establish a cognizable claim of past persecution or a well-founded fear of future persecution. We agree and deny the petition.

I.

Vuktilaj alleges that members and sympathizers of the Albanian Communist Party persecuted her and her family for supporting the Democratic Party. According to her testimony, she first

_____

[*]The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit.

became affiliated with the Democratic Party in 1989 while she was a student in Shkoder, Albania. In Shkoder, she was a general member of the party and participated in political demonstrations. After graduating in 1992, she returned to her home in Vermosh and became the party's secretary for her village of 1,000 people.

On June 11, 1997, unidentified individuals destroyed her home by setting it ablaze. No one was ever charged with the crime, but someone purportedly told her that the Communists were responsible for the act. Traumatized by the destruction of her house, Vuktilaj ceased her political involvement; her husband, however, remained active in protests—a decision that, according to Vuktilaj, led to several episodes in which police beat and mistreated him. Her curtailment of her own political activity ceased with the September 14, 1998, assassination of Democratic Party leader Azem Hajdari. While protesting the assassination, Vuktilaj suffered bruises when the police—using force to halt the turmoil that the demonstration was causing—beat her and other protesters.

On December 25, 1999, Vuktilaj's daughter, who had been playing outside, came inside the house crying and told her mother that some people had threatened to kidnap her. The threatening strangers warned the girl that her parents "have committed a big mistake . . . and they cannot, cannot get rid of [the] consequences." JA 80.

On March 20, 2000, at a rally to celebrate the electoral victory of the Democratic Party, her husband was beaten again. And on August 5, 2000, Vuktilaj and her daughter left Albania for the United States. Attempting to enter the United States with fraudulent passports, they were arrested at the border. Vuktilaj conceded removability, but petitioned for asylum under § 208 of the Immigration and Nationality Act, withholding of removal under § 241(b)(3) of the Act and

withholding of removal under Article 3 of the United Nations Convention Against Torture. After identifying material inconsistencies in Vuktilaj's testimony, the IJ found that Vuktilaj was not credible and had failed to meet the requisite burden of proof for any of her claims for relief. *See* IJ Op. at 6 (detailing the inconsistencies in Vuktilaj's attempt to qualify for asylum). Vuktilaj appealed to the BIA, and the BIA affirmed without opinion.

## II.

When the BIA affirms an IJ's decision without issuing an opinion, we review the decision of the IJ directly. *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005). An IJ's credibility determination must be upheld unless a reasonable adjudicator would be compelled to conclude to the contrary. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004).

## A.

The Attorney General has discretion to grant asylum to an alien who is a refugee. 8 U.S.C. § 1158(b)(1). "Refugee" status attaches to any person who is outside of the country of her nationality and who is unable or unwilling to return to that country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *Singh*, 398 F.3d at 401. The asylum applicant bears the burden of demonstrating that she has suffered persecution or has a well-founded fear of future persecution. *See Perkovic v. INS*, 33 F.3d 615, 620–21 (6th Cir. 1994). And that applicant may satisfy that burden with her own testimony "where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for [her] fear." *Id*. at 621 (internal quotation marks omitted).

In this instance, the IJ found that Vuktilaj's testimony was not credible. While we afford such a finding considerable deference, we still require it to be supported by specific reasons. *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). If the discrepancies in the alien's evidence cannot be viewed as attempts by the alien to enhance her claims of persecution, then the discrepancies do not bear on the alien's credibility. *Id*. Minor and irrelevant inconsistencies thus cannot constitute the basis for an adverse credibility determination. *Id*.

"For the most part," the IJ determined, "the respondent's claim for political asylum has been deemed not credible and also not plausible. It appeared throughout the testimony that as the respondent was questioned about inconsistencies or improbabilities that she began embellishing her asylum claim." IJ Op. at 11. The IJ based this determination on several material inconsistencies, including the following: (1) Vuktilaj initially declared that she was arrested but by the end of cross-examination she acknowledged that she had never been arrested, jailed or detained but then later claimed that she had been detained twice, only to distance herself eventually from that modified claim as well; (2) Vuktilaj's testimony that she decided to leave Albania because of the threat to her daughter conflicted with her statement at the border that she came to the United States to get together with her husband; (3) Vuktilaj's testimony that she believed the Communists burned down her house conflicted with her statement at the border that she did not know who destroyed her house; (4) Vuktilaj's statement at the border that she no longer had a home conflicted with her testimony that the Catholic church helped her to rebuild her home; and (5) Vuktilaj's explanation for her failure to mention any instances of persecution at the border—that she was afraid the information would get back to the Communists in Albania—did not square with her claim that she came to the United

States because it is a true democracy. Because these inconsistencies cut to the heart of her asylum claim and because the record supports each inconsistency, substantial evidence supports the IJ's determination that Vuktilaj was not credible.

Bolstering this conclusion is the IJ's observation that Vuktilaj failed to produce any corroborating evidence, even though such evidence was reasonably available. *See Shkabari v. Gonzales*, 427 F.3d 324, 331 (6th Cir. 2005) ("[E]ven when an applicant's credibility has not been questioned, the failure to provide reasonably available corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof.") (internal quotation marks omitted). Vuktilaj, for example, did not produce any evidence to corroborate the alleged acts of violence against her and her family. That her parents, who still reside in Albania, were able to send Vuktilaj her Democratic Party membership card demonstrated that she could have obtained other documentary evidence from her parents. And while Vuktilaj placed her husband on her witness list, he did not testify at her hearing, and she could not explain why he did not testify when the IJ asked her about the omission.

Lastly, Vuktilaj never showed that the Albanian government persecuted her or acquiesced in her persecution at the hands of others. In particular, she never connected the destruction of her home and the threat to her daughter to acts of the Albanian government, as opposed to the wanton acts of third parties. On this record, the IJ did not err in denying Vuktilaj's asylum claim.

B.

Vuktilaj's other arguments may be resolved quickly. First, to qualify for withholding of removal, Vuktilaj bore the burden of showing "that there is a clear probability that [she] would be

subject to persecution if [she] were to return to [Albania] because of her race, religion, nationality, membership in a particular social group, or political opinion." *Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003) (internal quotation marks omitted); *see also Singh*, 398 F.3d at 401; *Liti v. Gonzales*, 411 F.3d 631, 640–41 (6th Cir. 2005). Because the withholding-of-removal standard is "more stringent . . . than what is required on a claim for asylum," *id*. at 640 (internal quotation marks omitted), an applicant who fails to satisfy the "well-founded fear" standard for asylum necessarily cannot demonstrate a "clear probability" of future persecution, *id* at 641.

Second, Vuktilaj's due process claim—namely, that the BIA's streamlining process violates due process—is one that we have previously rejected. *See Denko v. INS*, 351 F.3d 717, 729–30 (6th Cir. 2003) (holding that "the BIA's streamlining procedures do not themselves alone violate an alien's rights to due process."). We reject the claim again today. *See Lumaj v. Gonzales*, — F.3d —, 2006 U.S. App. LEXIS 22640, at *3 n.1 (6th Cir. Sept. 6th, 2006).

III

For these reasons, we deny the petition for review.