NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0924n.06
Filed: December 21, 2006

No. 06-3074

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| NIKOLLE VUKTILAJ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF THE |
| | ) | ORDER OF THE BOARD OF |
| ALBERTO R. GONZALES, Attorney | ) | IMMIGRATION APPEALS |
| General, | ) | |
| | ) | |
| Respondent. | | |

Before:  SUTTON and GRIFFIN, Circuit Judges; and COHN, District Judge.[*]

**AVERN COHN, District Judge**.  This is an immigration case.  Petitioner Nikolle Vuktilaj
(Petitioner) seeks review of an order by the Board of Immigration Appeals (BIA) affirming the
Immigration Judges's (IJ) decision to deny Petitioner's claims for asylum and withholding of
removal under the Immigration and Nationality Act (INA) and relief under Article 3 of the
United States Convention Against Torture (CAT).  For the reasons that follow, the petition for
review will be denied.

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of
Michigan, sitting by designation.

I.

Petitioner is a native and citizen of Albania. He initially entered the United States on March 28, 2000, with fraudulent documents. The Immigration and Naturalization Service (INS) placed him in removal proceedings. On March 20, 2001, Petitioner conceded removability but filed an application for asylum, contending that he is entitled to relief on the grounds that he suffered past persecution as a result of his political activity, specifically on behalf of the Democratic Party. He supplemented his application on July of 2002.

During his hearing, Petitioner first testified about his family's persecution under the former communist regime. He stated that his father was executed in 1969 and his uncle was imprisoned for seven years for political crimes.

As to the facts relating to himself, Petitioner testified that he participated in several demonstrations against the communist regime from 1990 to 1992. He testified that he was arrested, beaten and threatened during some of these demonstrations. After one demonstration, which he says he co-organized, Petitioner says he was arrested and beaten and eventually hospitalized.

Petitioner also testified that from 1992 to 1996, after the fall of the communist regime, things were "good" until the Socialist Party gained control. Petitioner then discussed several incidents beginning in 1997. The first incident was the burning of his home on June 11, 1997. Another incident occurred after the election on June 29, 1997 in which Petitioner participated and spoke at a Democratic rally. Petitioner testified that he was stopped on his way home by two

police officers, was beaten in the head with a hammer, and received treatment at a hospital. The next incident occurred on December 12, 1997, during a rally to commemorate the founding of the Democratic Party. Petitioner testified he was arrested and detained for five days. Petitioner then testified that on September 14, 1998, he co-organized a demonstration protesting the assassination of Azem Hajdari, and was arrested, beaten, threatened and held for two days by the police. Petitioner also testified that on March 20, 1997, he participated in a Democratic Party rally and gave a speech. After the rally, he was stopped by the police who threatened to kill him if he did not leave the country. Petitioner left Albania two days later, on March 22, 1997.

In August 2000, Petitioner's wife and child left Albania and joined Petitioner in the United States.[1]

The IJ issued its decision in 2004 finding that Petitioner failed to demonstrate that he was entitled to relief based on claims for asylum, withholding of removal, or the CAT. The BIA affirmed the IJ's decision by an order dated December 22, 2005. Petitioner then filed an appeal with this Court.

## II.

### A.

Where the BIA adopts the decision of the IJ, we review the determination of the IJ

---

[1]Petitioner's wife and child were also placed in removal proceedings and filed applications for asylum, withholding of removal and for relief under the CAT. The IJ denied their applications and the BIA affirmed. A panel of this Court denied their petitions for review. *Vuktilaj v. Gonzales*, No. 05-3873, 2006 WL 2613370 (6th Cir. Sept. 12, 2006) (per curiam).

directly. *See Guang Run Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004). Here, the BIA acknowledged that not every reason identified by the IJ for finding Petitioner not credible was material to his claims, but nevertheless held that "in the aggregate, there are sufficient reasons stated for finding that [Petitioner] failed to meet his burden of proof." Essentially, the BIA adopted the reasoning of the IJ and therefore we review the decision of the IJ.

We review purely legal questions regarding the requirements of the INA and CAT *de novo*. *Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004). We will affirm the IJ's factual findings if substantial evidence supports such determinations. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Under this highly deferential standard, we will uphold an IJ's decision unless "the evidence presented was so compelling that no reasonable fact finder could fail to find the requisite persecution or fear of persecution." *Guang Run Yu*, 364 F.3d at 703.

In a similar fashion, in reviewing decisions regarding withholding of removal under the INA and CAT, we reverse only when the decision against withholding is "manifestly contrary to law." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006) (quoting 8 U.S.C. § 1252(b)(4)(C)).

### B.

#### 1.

Adjudicating a request for asylum involves a two-step inquiry: "(1) whether the applicant qualifies as a refugee as defined in [8 U.S.C.] § 1101(a)(42)(A), and (2) whether the applicant

4

merits a favorable exercise of discretion by the Attorney General." *Mikhailevitch v. I.N.S.*, 146

F.3d 384, 389 (6th Cir. 1998)(citation and quotation marks omitted). With respect to the first

issue, the term "refugee" is defined as

> any person who is outside any country of such person's nationality or, in the case of a
> person having no nationality, is outside any country in which such person last habitually
> resided, and who is unable or unwilling to return to, and is unable or unwilling to avail
> himself or herself of the protection of, that country because of persecution or a
> well-founded fear of persecution on account of race, religion, nationality, membership in
> a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).

"The asylum applicant bears the burden of establishing that he or she qualifies as a

refugee 'either because he or she has suffered past persecution or because he or she has a

well-founded fear of future persecution.' " *Ouda v. I.N.S.*, 324 F.3d 445, 451 (6th Cir. 2003)

(quoting 8 C.F.R. § 208.13(b)). Once the applicant shows that he or she has suffered from past

persecution, the applicant is presumed to have a well-founded fear of future persecution.

*Mikhailevitch*, 146 F.3d at 389 (quoting 8 C.F.R. § 208.13(b)(1)). This presumption can be

rebutted "only through establishing by a preponderance of the evidence that since the persecution

occurred, conditions in the applicant's country 'have changed to such an extent that the applicant

no longer has a well-founded fear of being persecuted if he were to return.'" Id. (citation

omitted).

Here, the IJ concluded that Petitioner was not credible in his claim that he suffered past

persecution. This Court has stated that though "an adverse credibility finding is afforded

substantial deference, the finding must be supported by specific reasons. An adverse credibility

finding must be based on issues that go to the heart of the applicant's claim. They cannot be based on an irrelevant inconsistency." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004) (internal quotation and citations omitted).[2]

Petitioner says that the IJ erred because the credibility finding was based on irrelevant factors, including the timing of the filing of his application, whether the application was complete, and whether Petitioner neglected to mention variations in his addresses. Although the IJ noted such facts, these matters did not form the basis for the IJ's credibility determination. Even assuming, as the BIA noted, that some of IJ's credibility determinations were not relevant to Petitioner's claims, the IJ discusses several relevant discrepancies in the record which amply support an adverse credibility determination.

For instance, Petitioner's request for relief from removal was based upon his membership and participation in the Democratic Party. However, Petitioner submitted a document from the "13 Dhjetori 1990" political association that identified him as a founder of the Republican Party. When the IJ questioned Petitioner about this apparent discrepancy, Petitioner stated he had founded the Republican Party but did not join it because he was a Democrat. The document also mentions that Petitioner was arrested once in 1991, but fails to mention the several other

---

[2]The REAL ID Act of 2005, Pub.L. 109-13, 119 Stat. 231 (codified in various sections of 8 U.S.C.), changed the standard governing credibility determinations, stating that those determinations may be made "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). This provision, however, only applies to aliens who applied for asylum, withholding of removal, or other relief on or after May 11, 2005, the effective date of this division of the Act. Pub.L. 109-13, div. B, § 101(h)(2), 119 Stat. 231 at 305. Because Petitioner applied for relief in 2001, this provision of the REAL ID Act does not apply to our review of his claims.

instances which form the basis for his claims for relief. The IJ questioned Petitioner regarding the document, and he answered that he cannot be expected to have listed every event. The IJ concluded that the document "raises serious questions about whether or not [Petitioner] was ever a member of the Democratic Party and whether or not he was just a member of the Republican Party, and whether he was ever arrested more than just the one time" (JA at 31-32). This finding was substantially justified.

Additionally, Petitioner submitted a document from a hospital where he was apparently treated after the July 21, 1997, police assault with a hammer. The hospital record states that Petitioner was injured as a result of an accident, not an assault, and is inconsistent with the amount of time that Petitioner testified he spent in the hospital. The IJ discussed in detail other discrepancies in other purported medical documents and was correct in concluding that those variances bore on Petitioner's credibility.

Also supportive of an adverse credibility finding was Petitioner's expanded testimony regarding certain incidents, particularly the alleged arson of his home. In his written statement, Petitioner simply relayed that "On June 11, 1997 Socialist bands put fire to my house and continued threatening me, my family and my relatives to vote for Socialist Party." At the hearing, Petitioner added facts regarding this incident, namely that his wife and child were in the home at the time of the fire and were saved only because of the timely intervention of his brother-in-law. The omission of such details from the written application impacts Petitioner's credibility.

7

The inconsistences in Petitioner's testimony, which go to the "heart" of his asylum claim, "undermine a claim of persecution." *Patel v. Gonzales*, 126 Fed. Appx. 283, 291 (6th Cir. 2005). Overall, the IJ's credibility determination is supported by substantial evidence.

The IJ alternatively found that even if Petitioner was credible, he no longer has a fear of future persecution because of changed country conditions. We agree. The IJ looked to recent State Department Reports, on which it was entitled to rely. *See Lumaj v. Gonzales*, No. 05-3350, 2006 WL 2547466 , at *2 (6th Cir. Sept. 6, 2006). Indeed, a report shows that as of the Summer of 2005, the Democratic Party returned to power in Albania, winning a majority of seats in Albania's Parliamentary elections. *See* JA at 58. Petitioner, however, relies on the 2001 State Department Report as support for his persecution claim. This report, however, states that there is little evidence of individuals being mistreated on political grounds. The IJ also considered a 2004 profile by the State Department, which noted the changed and improved political conditions in Albania. Thus, even assuming Petitioner was credible, there is substantial evidence to support the finding that Petitioner cannot demonstrate a reasonable fear of future persecution should he return to Albania.

2.

Petitioner also challenges the BIA's denial of his request for withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). Withholding of removal is required if the alien can demonstrate that "his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or

political opinion." 8 C.F.R. § 1208.16(b). "An applicant seeking withholding of removal faces a more stringent burden than what is required on a claim for asylum." *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004). In order to qualify for withholding of removal, Petitioner "must establish that there is a clear probability that he will be subject to persecution if forced to return to [Albania]." *Id*. To establish a clear probability, the applicant must demonstrate that "it is more likely than not" that he will be persecuted upon return. 8 C.F.R. § 1208.16(b)(2).

Because Petitioner has failed to establish his eligibility for asylum, "it therefore follows that [Petitioner] cannot satisfy the more stringent standard for withholding of [removal]" as well. *Koliada v. INS*, 259 F.3d 482, 489 (6th Cir. 2001). Contrary to Petitioner's suggestion to the contrary, no additional analysis by the IJ was required.

3.

Petitioner's claim for review of the BIA's denial of relief under CAT likewise fails. "Protection under the Convention exists in the form of withholding of removal to the country of torture." *Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001). To obtain relief under CAT, Petitioner bears the burden of establishing "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Because Petitioner failed to establish eligibility for asylum, he also cannot meet the heightened requirements for relief under CAT. *Pilica*, 388 F.3d at 955.

4.

Petitioner says he is entitled to humanitarian asylum under 8 C.F.R. § 1208(b)(1)(iii)(B). This section allows for a discretionary grant of asylum to an alien who can establish "a reasonable possibility that he or she may suffer other serious harm upon removal to that country." 8 C.F.R. § 1208.13(b)(1)(iii)(B).

Petitioner cites *Liti v. Gonzales*, 411 F.3d 631 (6th Cir. 2005) in support. In *Liti*, a panel of this Court found that the petitioners' humanitarian asylum claims were unexhausted because the applicable regulation became effective in January 2001, after the petitioners had appealed the IJ's order, but before the BIA issued its decision. Here, unlike *Liti*, the hearing before the IJ was in 2004, three years after the regulation became effective. Moreover, the record does not show that Petitioner sought relief on this ground. Having failed to raise this issue before the BIA below, this Court lacks jurisdiction to consider Petitioner's claim for review on this ground. *See* 8 U.S.C. § 1252(d)(1); *Perkovic v. INS*, 33 F.3d 615, 619 (6th Cir. 1994).

III.

For the reasons stated above, the petition for review is DENIED.